1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9

Thomas Stewart, Jr.,

10              Petitioner,

11   vs.

12

Charles Ryan, et al.,

13              Respondents.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

)   No. CV-12-1688-PHX-JAT (LOA)
)
)   **REPORT AND RECOMMENDATION**
)
)
)
)
)
)
)
)

This matter is before the Court on Petitioner's *pro se* Petition for Writ of Habeas Corpus (the "Petition"), pursuant to 28 U.S.C. § 2254, in which Petitioner challenges his criminal convictions in Maricopa County, Arizona, Superior Court, Case No. CR2002-020994. (Doc. 1) In addition to the Petition, Petitioner has submitted two Supplements. (Docs. 5, 6) Respondents have filed an Answer to Petition for Writ of Habeas Corpus Limited to Affirmative Defenses (the "Answer") and supporting exhibits. (Docs. 15, 16) Petitioner has filed a Traverse (the "Reply") and a Supplemental Citation of Points and Authorities Re: Traverse.[1] (Docs. 26, 19)  As explained below, the undersigned Magistrate Judge recommends the Petition be denied as untimely.

---

[1] Also pending is Petitioner's Motion to Supplement his Petition for Writ of Habeas Corpus.  (Doc. 23)  The undersigned Magistrate Judge has considered the information provided in the Motion to Supplement and will, therefore, grant the Motion by separate order.

**I. Background**

      **A. Trial and Sentencing**

      On December 19, 2002, the State of Arizona indicted Petitioner on one count of First Degree Murder, a Class One Dangerous Felony; one count of Leaving the Scene of a Fatal Injury Accident, a Class Three Felony; three counts of Aggravated Assault, Class Three Dangerous Felonies; and one count of Leaving the Scene of an Injury Accident, a Class Six Felony. (Doc. 15, Exhibit ("Exh.") A) Following a one-week jury trial[2] in November and December 2003, the jury found Petitioner guilty of the lesser-included offense of Second Degree Murder, Leaving the Scene of a Fatal Injury Accident, and two counts of Aggravated Assault. (Doc. 15, Exh. G) On March 26, 2004, the trial court sentenced Petitioner to sixteen years in prison for the Second Degree Murder conviction, six and a half years for Leaving the Scene of a Fatal Injury Accident, and seven and a half years for each of the two Aggravated Assault convictions, all terms to run concurrently with each other. (Doc. 15, Exh. H at 19-21) On March 31, 2004, Petitioner, through counsel, filed a Motion to Vacate Judgment and requested an evidentiary hearing. (Doc. 15, Exh. I) Following a hearing, the trial court denied the motion on May 14, 2004. (Doc. 15, Exh. J)

      **B. Direct Review**

      After filing a timely Notice of Appeal, Petitioner, through counsel, filed an Opening Brief on November 15, 2004. (Doc. 15, Exh. K) The State then filed an Answering Brief and Petitioner filed a Reply Brief. (Doc. 15, Exhs. L, M) On August 2, 2005, the Arizona Court of Appeals issued a Memorandum Decision in which it affirmed Petitioner's convictions and sentences. (Doc. 15, Exh. N) Petitioner then requested, through counsel, an extension of time to file a Petition for Review to the Arizona Supreme Court. (Doc. 15, Exh. O) Even though Petitioner's motion for an extension was granted, extending until October 7, 2005 the time to file such a petition, Petitioner never filed a Petition for Review. (Doc. 15, Exhs. P, Q)

---

[2] The Honorable Stephen A. Gerst presided over the trial and sentencing.

1

### C. State Post-Conviction Proceedings

2        On May 25, 2004, eleven days after the trial court denied his Motion to Vacate

3  Judgment and long before his direct appeal was decided, Petitioner filed a *pro se* Notice of

4  Post-Conviction Relief.  (Doc. 15, Exh. R)  After the trial court appointed counsel, counsel

5  filed a notice that Petitioner had filed a motion to dismiss his post-conviction relief notice.

6  (Doc. 15, Exh. S, T)  The trial court granted the motion and dismissed the post-conviction

7  proceeding on June 18, 2004.  (Doc. 15, Exh. U)

8        On September 2, 2005, after the Court of Appeals issued its Memorandum Decision

9  on direct appeal but before the deadline for seeking review in the Arizona Supreme Court

10  expired, Petitioner filed a second *pro se* Notice of Post-Conviction Relief.  (Doc. 15, Exh.

11  V)  The trial court again appointed counsel to represent Petitioner.  (Doc. 15, Exh. W)

12  Counsel subsequently filed a Notice of Completion of Post Conviction Review by Counsel;

13  Request for Extension of Time to Allow Defendant to File a Pro Per Petition for Post-

14  Conviction Relief.  (Doc. 15, Exh. X)  Based on Counsel's Notice that, after review and

15  analysis of the record, he found no grounds to raise in a petition for post-conviction relief,

16  the trial court granted Petitioner an extension of time to file a *pro se* petition. (*Id.*)   On

17  August 29, 2006, Petitioner filed a *pro se* Petition for Post-Conviction Relief in the trial

18  court.  (Doc. 15, Exh. Y)  After the State filed a Response and Petitioner filed a Reply, the

19  trial court issued a ruling on December 4, 2006.  (Doc. 16, Exh. MM)  The trial court

20  determined Petitioner failed to state a colorable claim which would entitle him to relief and,

21  as a result, dismissed the petition. (*Id.*)  On December 15, 2006, Petitioner filed a Notice of

22  Filing Motion for Reconsideration and Extension of Time to Prepare, which the trial court

23  denied on January 4, 2007.  (Doc. 16, Exhs. OO, TT)  Despite the denial, Petitioner filed a

24  Motion for Reconsideration from the Denial of Petition for Post-Conviction Relief on

25  January 9, 2007.  (Doc. 16, Exh. UU)  The trial court denied the Motion for Reconsideration

26  on January 19, 2007.  (Doc. 16, Exh. XX)  On February 1, 2007, Petitioner filed a Notice of

27  Filing Petition for Review of Denial of Motion for Reconsideration of Petition for Post-

28  Conviction Relief.  (Doc. 16, Exh. ZZ)  The Notice raised no substantive issues and stated

that Petitioner has separately filed a Petition for Review. (*Id.*) According to Respondents, however, their review of the dockets for the four matters Petitioner initiated in the Arizona Court of Appeals following his direct appeal, shows he never filed a petition for review from the trial court's order denying his Petition for Post-Conviction Relief. (Doc. 15 at 22) (citing Exhibits PP, WW, JJJ, BBBB)

Petitioner filed a third *pro se* Notice of Post-Conviction Relief on March 8, 2010, in which Petitioner contended, among other things, that there was newly discovered evidence to prove his actual innocence. (Doc. 16, Exh. HHH, III) On March 19, 2010, the trial court determined the notice was successive and Petitioner failed to satisfy any of the exceptions that would allow a successive notice and petition. (Doc. 16, Exh. III) As a result, the trial court dismissed the notice. (*Id.*) On March 22, 2010, Petitioner filed a document the Arizona Court of Appeals construed as a Petition for Review from the denial of his third post-conviction relief notice. (Doc. 16, Exhs. JJJ, KKK) The State subsequently filed a Response and Petitioner filed a Reply. (Doc. 16, Exhs. LLL, MMM) On August 22, 2011, the Arizona Court of Appeals denied review. (Doc. 16, Exh. NNN)

On November 4, 2010, Petitioner filed a fourth Notice of Post-Conviction Relief, Successive Petition for Post-Conviction Relief, and other related motions. (Doc 16, Exhs. OOO, PPP, QQQ and RRR) On November 18, 2010, the trial court ruled Petitioner failed to raise a colorable claim of newly discovered material facts that would have changed the verdict, or actual innocence. (Doc. 16, Exh. TTT) As a result, the court dismissed the notice and petition. (*Id.*) On January 10, 2011, the trial court denied Petitioner's request for reconsideration. (Doc. 16, Exh. XXX) Petitioner subsequently filed a Cross-Petition for Review on March 4, 2011, which the Arizona Court of Appeals construed as a Petition for Review. (Doc. 16, Exhs. AAAA, BBBB) On March 23, 2011, the Arizona Court of Appeals denied the Petition for Review as untimely. (Doc. 16, Exh. CCCC) Petitioner's Motion for Reconsideration was also denied by the Court of Appeals. (Doc. 16, Exhs. DDDD, FFFF) Nothing has been presented to show Petitioner sought review in the Arizona Supreme Court.

1     **D. Federal Habeas Petition**

2          On August 6, 2012, Petitioner filed his Petition for Writ of Habeas Corpus in this

3     District Court.[3] (Doc. 1)  Although Petitioner lists four grounds for relief in the Petition, he

4     includes multiple claims within each ground for relief.  (Doc. 1-2 at 32, 1-2 at 33, 1-3 at 3

5     and 1-3 at 6)[4]  In Ground One, Petitioner claims he was denied the opportunity to cross-

6     examine a witness in violation of the Sixth Amendment; the prosecutor improperly

7     commented on his right to remain silent in violation of the Fifth Amendment; and the trial

8     court erroneously issued a "flight instruction" in violation of the Fourteenth Amendment.

9     (Doc. 1-2 at 32)  In Ground Two, Petitioner alleges ineffective assistance of trial and

10    appellate counsel, prosecutorial misconduct, and an abuse of discretion by the trial court.

11    (Doc. 1-2 at 33)  Petitioner alleges in Ground Three the indictment was defective and was

12    obtained through vindictive prosecution and prosecutorial misconduct, in violation of the

13    Fifth, Sixth and Fourteenth Amendments.  (Doc. 1-3 at 3)  In Ground Four, Petitioner alleges

14    the State's witnesses committed perjury at trial, the State failed to disclose *Brady* material

15    prior to trial, and there is newly discovered evidence.  (Doc. 1-3 at 6)  On December 28,

16    2012, Respondents filed their Answer.  (Doc. 15)  Petitioner filed his Reply on February 15,

17    2013. (Doc. 26)

18    **E. Factual Summary**

19         In its Memorandum Decision on direct review, the Arizona Court of Appeals

20    summarized the facts of the case as follows:

21              At approximately 3:47 a.m. on June 18, 2002, Willie, William and
              Rachel, individuals who frequented an area of Phoenix known as "the zone,"

22

23         [3] The docket reflects the Petition was actually filed on August 8, 2012. (Doc. 1) The

24    August 6, 2012 filing date is the date Petitioner signed the Petition, doc. 1-4 at 11, and
      reflects the application of the prison mailbox rule, *i.e.*, a petition is deemed filed on the date

25    it is delivered to prison authorities for mailing. *See Jenkins v. Johnson*, 330 F.3d 1146, 1149

26    n. 2 (9th Cir. 2003).

27         [4] The docket and page numbers cited here were generated by the Court's case

28    management and electronic filing system. They do not reflect the numbers assigned by
      Petitioner or the pre-printed numbers on the habeas form.

1  were standing at the corner of Ninth Avenue and Jefferson Street. William
2  was talking with Willie on the sidewalk; Willie was straddling his bicycle.
   Other people were also "hanging out" there.

3      Both William and Rachel knew Stewart, a self-professed self-employed
   tree trimmer known as "the tree man." They were also familiar with his 1979
4  GM pickup truck.

5      As William and Rachel stood on the corner, they noticed Stewart's
   truck moving east on Jefferson. Suddenly, the truck "came ... around like it
6  was going to make a U-turn," stopped and faced Willie, William and Rachel.
   Its headlights then were switched off; its engine was revved, and the truck was
7  driven squarely at them. Both Rachel and William saw that it was in fact
   Stewart driving the truck as it came towards them. Indeed, Rachel thought
8  Stewart looked at them with a "strange look in the eyes," and William thought
   Stewart looked "focused on a mission."
9
       The truck jumped the curb and hit Willie and William directly. The
10 truck's passenger-side mirror hit Rachel in the back of the head, pitching her
   forward to the ground. Willie was rendered unconscious and died several days
11 later of complications from multiple blunt-force traumatic injuries, including
   fatal injuries to the liver and kidneys. William suffered a concussion that has
12 permanently affected his equilibrium. Rachel suffered injuries to her arms,
   legs and back of her head.
13
       Stewart never stopped his truck after hitting the three victims, but drove
14 off the sidewalk and proceeded southbound on Ninth Avenue, strewing palm
   fronds and tree cuttings from the bed of his truck in his wake. He then
15 encountered Oliver, who was riding his bicycle northbound on Ninth Avenue.
   Oliver saw Stewart's truck "moving in a fashion ... [as if] looking for
16 something." Suddenly, the truck "turned direction" to directly face Oliver and
   picked up speed. Oliver "panicked" and pedaled away as fast as he could to
17 avoid being struck head on. However, Stewart hit Oliver with the driver's side
   of the truck before Stewart sped off again. The impact injured Oliver's right
18 leg and "mangled" his bicycle.

19     Although he could not identify him, Oliver noticed that the driver was
   a black male, and he recognized the truck as one he had "seen before in the
20 area" associated with the person he knew "from the streets as ... the tree man."
   Shortly thereafter, Rachel, who was also Oliver's friend, came down the street
21 and told Oliver about the incident that had occurred at the corner. She said
   that the driver of the truck had been Stewart.
22
       Responding to several 9-1-1 calls, Phoenix police officers arrived at the
23 scene of the first incident within minutes. One of the callers was Edward
   Gibson who had been on the corner of Ninth Avenue and Jefferson when
24 Stewart had driven his truck onto the sidewalk. Gibson identified himself to
   Officer David Mendez and recounted what had happened. He described the
25 driver as "a black male" and the vehicle as a tan or beige "landscaping truck
   with bushes and shrubs in the back and wood slats on the side."
26
       Rachel told the officers that she did not know the driver but that he was
27 "a black male," and she gave a general description of the truck. Several hours
   later, however, she approached Detective Wendy Zeller at the site of the
28 incident involving Oliver, told her that "the truck belonged to a guy named

- 6 -

Thomas," and described Stewart and his truck. Rachel did not tell Zeller that she had actually seen Stewart driving the truck during the first incident, but she did tell her that Stewart "normally was the only one that drove the truck, or that she had ever seen driving the truck."

Officer Wade Niver, who often worked in "the zone," recognized the truck from witnesses' descriptions as one he had noticed in the area. Upon further investigation, Niver was able to link Stewart to the truck and generate a photograph of Stewart that he distributed to his fellow officers. A few hours later on June 18, officers arrested Stewart in his truck in the parking lot of neighborhood convenience store. Subsequently, Rachel went to police headquarters where she selected Stewart's photograph out of a lineup, saying that "he was the one who ran me over."

* * *

Rachel, William and Oliver testified at trial. Each identified Stewart as the driver of the truck that had struck each of them. Stewart challenged the identification by highlighting the fact that the victims had initially failed to identify him to officers at the scene and given varying descriptions of the color of his truck.

Stewart also testified. He admitted driving onto the sidewalk at Ninth Avenue and Jefferson but said that he had done so to avoid pursuit by unknown individuals who he believed had "a contract" out on him for being "a snitch." He added that he had turned off his truck's headlights before driving onto the sidewalk "[b]ecause, in that area, that's the way it goes ... . If you don't somebody may even shoot you." He also claimed that he had not hit anyone at that location but that, if he had, he had been unaware of it. He denied seeing or hitting anyone else after proceeding south on Ninth Avenue.

(Doc. 6-1)[5]

## II. Discussion

Respondents argue the Petition should be dismissed as time-barred because it was not filed within the applicable statute of limitations period. Alternatively, Respondents contend Petitioner's claims are procedurally defaulted. Because the information presented clearly establishes the Petition was filed after the limitations period expired, the undersigned Magistrate Judge finds the Petition is barred and recommends it be denied on that basis. It is, therefore, unnecessary to address Respondents' alternative argument.

---

[5] The copy of the Arizona Court of Appeals Memorandum Decision provided by Respondents is incomplete. (*See* Doc. 15, Exh. N) Accordingly, the Court cites to a Supplement, doc. 6, filed by Petitioner to which a full copy of the Memorandum Decision is attached.

**A. Legal Standards**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[6] imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. *See* 28 U.S.C. § 2244(d)(1).  The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C. § 2244(d)(2); *Lott v. Mueller*, 304 F.3d 918, 921 (9th Cir. 2002).  An application for post-conviction relief remains "pending" for purposes of the tolling provision in § 2244(d)(2) until it achieves final resolution through the State's post-conviction procedure.  *Carey v. Saffold*, 536 U.S. 214, 219-220 (2002).  A post-conviction petition is "clearly pending after it is filed with a state court, but before that court grants or denies the petition."  *Chavis v. Lemarque*, 382 F.3d 921, 925 (9th Cir. 2004).  In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed even though the petition itself may not be filed until later.  *Isley v.*

---

[6] The AEDPA, which was signed into law on April 24, 1996, governs federal habeas petitions filed after the date of its enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997).

*Arizona Department of Corrections*, 383 F.3d 1054, 1056 (9th Cir. 2004) ("[W]e hold that Isley's state petition was "pending" within the meaning of 28 U.S.C. § 2244(d)(2) and he was entitled to tolling from the date when the Notice was filed. The district court erred in dismissing his petition as untimely.").

An application for post-conviction relief is also pending during the intervals between a lower court decision and a review by a higher court. *Biggs v. Duncan*, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing *Carey*, 536 U.S. at 223). The time between a first and second application for post-conviction relief, however, is not tolled because no application is "pending" during that period. *Id*., 339 F.3d at 1048; *see also King v. Roe*, 340 F.3d 821 (9th Cir. 2003) (The petitioner was "not entitled to tolling during the interval between the completion of one round of state collateral review and the commencement of a second round of review."). Moreover, filing a new petition for post-conviction relief does not reinitiate a limitations period that ended before the new petition was filed. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

The AEDPA statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). For equitable tolling to apply, a petitioner must show "(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way" that prevented him from filing a timely petition. *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted).

**B. Analysis**

**1. Limitations Period**

Here, the Arizona Court of Appeals, on direct review, affirmed Petitioner's convictions and sentences on August 2, 2005. (Doc. 15, Exh. N) Under normal circumstances, Petitioner would have had thirty days to seek review in the Arizona Supreme Court. *See* Ariz. R. Crim. P. 31.19(a) (petition for review to the Arizona Supreme Court must be filed within 30 days after the filing of the decision by the Court of Appeals). Here, however, Petitioner sought and received an extension of time that gave him until October 7, 2005 to file a petition for review in the Arizona Supreme Court, though he never filed such

1   a petition.  (Doc. 15, Exh. P, Q)  As a result of Petitioner's failure to seek review in the

2   Arizona Supreme Court, his convictions became final upon the expiration of the time to seek

3   review, which was October 7, 2005.  *See* 28 U.S.C. § 2244(d)(1)(A); *Hemmerle v. Schriro*,

4   495 F.3d 1069, 1074 (9th Cir. 2007) (direct appeal was final on the date the petitioner

5   allowed his time to seek review in the Arizona Supreme Court to expire).  Thus, absent any

6   tolling, the AEDPA's statute of limitations period would have started to run the next day, on

7   October 8, 2005.

8          **2. Statutory Tolling**

9          The limitations period did not begin to run on October 8, 2005 because statutory

10  tolling pursuant to § 2244(d)(2) applies here.  Petitioner had filed his second Notice of Post-

11  Conviction Relief on September 2, 2005, which was still pending on October 8, 2005, thus

12  tolling the limitations period.[7]  The limitations period remained tolled until January 19, 2007,

13  the date the trial court denied Petitioner's Motion for Reconsideration from the Denial of

14  Petition for Post-Conviction Relief.[8]  Thus, the limitations period began to run the next day,

15  January 20, 2007, because no application for post-conviction relief was "pending" at that

16  time. *See* 28 U.S.C. § 2244(d)(2); *see also Hemmerle*, 495 F.3d at 1077 (after denial of

17  review by the Arizona Supreme Court, "nothing remained 'pending' for purposes of §

18  2244(d)(2)."); *Lawrence v. Florida*, 549 U.S. 327, 334 (2007) ("When the state courts have

19  issued a final judgment on a state [post-conviction] application, it is no longer pending even

20  if a prisoner has additional time for seeking review of that judgment through a petition for

21  certiorari.").  The limitations period ran uninterrupted until it expired one year later on

22

23  _____

24         [7] Petitioner's first Notice of Post-Conviction Relief had no impact on the limitations
25  period, as it was dismissed on June 18, 2004, well before the completion of direct review.
    (Doc. 15, Exh. U)

26         [8] As noted above, the Arizona Court of Appeals docket shows nothing to indicate
27  Petitioner sought further review of the trial court's denial of his motion for reconsideration.
    The trial court's decision was, therefore, the "final resolution through the State's post-
28  conviction procedures." *See Carey*, 536 U.S. at 219-220.

1    January 22, 2008.[9] Petitioner's third and fourth notices of post-conviction relief did not

2    further toll the limitations period because it had already expired by the time Petitioner filed

3    his third notice on March 8, 2010. *See Ferguson*, 321 F.3d at 823. Petitioner filed his Petition

4    in this District Court on August 6, 2012, more than four and a half years after the limitations

5    period expired.  Consequently, the Petition is untimely.

6        **3. Petitioner's Motion to Remand for New Determination of Probable Cause**

7        In addition to initiating four post-conviction relief proceedings, Petitioner filed a

8    Motion to Remand for a New Determination of Probable Cause in the trial court on

9    September 19, 2006, in which he claims a detective provided false testimony before the

10   grand jury.  (Doc. 16, Exh. BB)  The trial court denied the motion on October 2, 2006,

11   finding that  "[a]ny alleged defects in the grand jury's determination of probable cause have

12   been waived by the defendant's failure to move for remand pretrial and the petit jury's

13   subsequent verdict of guilty."   (Doc. 16, Exh. CC)   Petitioner filed a Motion for

14   Reconsideration on October 23, 2006, which the trial court denied on October 30, 2006.

15   (Doc. 16, Exhs. EE, GG)

16       On November 14, 2006, Petitioner filed a Notice of Appeal, challenging the trial

17   court's denial of the Motion for Reconsideration. (Doc. 16, Exh. JJ) The Arizona Court of

18   Appeals issued an order on December 14, 2006, dismissing the appeal because an order

19   denying a motion to remand for new determination of probable cause is not appealable.

20   (Doc. 16, Exh. NN)

21       Undeterred, Petitioner then filed on January 4, 2007, a Petition for Special Action

22   regarding the denial of his motion to remand.  (Doc. 16, Exh. SS)  The Arizona Court of

23   Appeals declined to accept jurisdiction on January 12, 2007. (Doc. 16, Exh. VV)   A

24   subsequent Petition for Review to the Arizona Supreme Court was denied on May 3, 2007.

25   (Doc. 16, Exh. BBB)  Finally, on June 5, 2007, Petitioner filed a Petition for Writ of

26   Certiorari from the Denial of Review of Special Action in the United States Supreme Court,

27   _____

28       [9] Because the actual one-year mark occurred over a holiday weekend, the end of the
     limitations period extended to the next business day, which was Tuesday, January 22, 2008.

which was denied on October 29, 2007.  (Doc. 16, Exhs. CCC, DDD)

Petitioner's numerous filings pertaining to his request to remand for a new determination of probable cause did not toll the limitations period.  As discussed above, Petitioner's second post-conviction proceedings tolled the limitations period until January 19, 2007.  Thus, the only remand-related filing that could have further tolled the limitations period was the Petition for Special Action, which was filed on January 4, 2007, and concluded on October 29, 2007, when the United States Supreme Court denied the Petition for Writ of Certiorari.  Special actions, however, do not toll the AEDPA limitations period because they are not "application[s] for State post-conviction or other collateral review with respect to the pertinent judgment or claims" within the meaning of § 2244(d)(2).  *See Dema v. Arizona*, 2008 WL 2941167, at *11 (D. Ariz. Jul. 25, 2008) (Special Action pursuant to 17B A.R.S. Special Actions, Rules of Proc. 1 did not toll the AEDPA limitations period).  Accordingly, this Magistrate Judge finds the limitations period was unaffected, and not tolled, by Petitioner's Special Action challenging the denial of his Motion to Remand for a New Determination of Probable Cause.

### 4. Equitable Tolling

As referenced above, the limitations period set forth in § 2244(d)(1) is subject to equitable tolling where a petitioner shows he has been pursuing his rights diligently and extraordinary circumstances prevented him from filing a timely petition.  *Holland*, 130 S.Ct. at 2562.  Equitable tolling is applied sparingly, as reflected by the "extraordinary circumstances" requirement.  *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009).  Equitable tolling is not available in most cases, and it is not available here.  *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.") (citation omitted).  An "external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part.'"  *Waldron-Ramsey*, 556 F.3d at 1011(quoting *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008)).  A *pro se* petitioner's ignorance of the law and lack of legal sophistication do not constitute

1    "extraordinary circumstances" warranting equitable tolling. *Raspberry v. Garcia*, 448 F.3d

2    1150, 1154 (9th Cir. 2006) (collecting cases from other circuits and holding that "a *pro se*

3    petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance"); *see*

4    *also Johnson v. United States*, 544 U.S. 295, 311 (2005) (in the 28 U.S.C. § 2255 context,

5    rejecting movant/prisoner's attempt to justify his lack of diligence on his *pro se* status and

6    lack of legal sophistication and stating: "we have never accepted *pro se* representation alone

7    or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy

8    calls for promptness"); *Waldron-Ramsey*, 556 F.3d at 1013 n. 4 ("a pro se petitioner's

9    confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling"),

10   *cert. denied*, 558 U.S. 897 (2009).  A petitioner seeking equitable tolling bears the burden

11   of demonstrating it is warranted in his case. *Doe v. Busby*, 661 F.3d 1001, 1011 (9th Cir.

12   2011) (citing, *inter alia*, *Holland*, 130 S.Ct. at 2562).

13          A habeas petitioner may also be entitled to equitable tolling of the limitations period

14   if he makes a convincing showing of actual innocence.  *McQuiggen v. Perkins*, 133 S.Ct.

15   1924, 1928 (2013). "[A]ctual innocence, if proved, serves as a gateway through which a

16   petitioner may pass" to overcome the expiration of the statute of limitations. *Id.* As the

17   Supreme Court cautioned, however, tenable actual innocence claims are rare: "'[A] petitioner

18   does not meet the threshold requirement unless he persuades the district court that, in light

19   of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond

20   a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  "Unexplained

21   delay in presenting new evidence bears on the determination whether the petitioner has made

22   the requisite showing." *Id.* at 1935.

23          Here, Petitioner has failed to show extraordinary circumstances stood in his way and

24   prevented him from filing a timely petition.  In the Petition itself, on the page where space

25   is provided to explain why the statute of limitations should not bar his Petition, Petitioner

26   simply claims that after his direct appeal was final, he filed timely petitions for post-

27   conviction relief.  In the Reply, Petitioner asserts that he "is entitled to equitable tolling on

28   all basis [sic]," though he fails to follow that assertion with any facts to support it.  (Doc. 26

at 29)  Petitioner has presented no compelling argument in any of his numerous filings that shows extraordinary circumstances prevented him from filing a timely petition.  (*See* docs. 1, 5, 6, 19, 23 and 26)

Petitioner has also failed to make a convincing showing of actual innocence that would warrant equitable tolling of the limitations period. Nowhere in Petitioner's unorganized filings has he made a colorable claim showing that in light of new evidence presented, any juror, acting reasonably, would have voted to find him not guilty. *See McQuiggen*, 133 S.Ct. at 1928.[10]  For these reasons, Petitioner is not entitled to equitable tolling of the limitations period.

**5. Factual Predicate of Claim in Ground Four**

Petitioner does not argue in the Reply, or elsewhere, that another subsection of § 2244(d)(1) should apply and cause the limitations period to run from a date other than "the conclusion of direct review or the expiration of the time for seeking such review."  *See* 28 U.S.C. § 2244(d)(1)(A). Nonetheless, Respondents contend that one of Petitioner's claims in Ground Four implicates § 2244(d)(1)(D), which applies a limitations period from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  (Doc. 15 at 50)  They characterize the claim as

---

[10] Respondents address as a potential claim of actual innocence an assertion by Petitioner that he learned through other individuals that one of the witnesses at his trial admitted to lying, but the witness was unwilling to sign an affidavit for Petitioner.  (Doc. 15 at 70)  Respondent's citation to the page of the Petition that includes this assertion is inaccurate. (*See* Doc. 1-3 at 6, not Doc. 1-4 at 6)  Regardless, unsupported hearsay statements that a witness admitted years after the fact to lying at the trial do not rise to the level of a convincing showing of actual innocence.

Respondents further contend that "Petitioner's state and federal court pleadings" indicate two other "possible arguments" for an actual innocence claim. (Doc. 15 at 70)  Respondents, however, fail to indicate where in the Petition itself Petitioner presents such claims. Notwithstanding Respondents' speculation of possible actual innocence claims Petitioner may be intending to raise, this Magistrate Judge finds Petitioner has not presented convincing claims of actual innocence in the Petition.  Moreover, Respondents' reliance on State court pleadings to discern "possible" claims of actual innocence is improper as Petitioner must present such claims in *this* action for them to be considered.

1   follows:

2       Ground 4-A: Sometime in September 2010, Petitioner allegedly learned that
        Eric Stewart and Mark Michaels had a conversation with Roger W. Thompson,
3       who reported that William Foster Thomas "admitted lying at [Petitioner's] trial
        to him, but he refused to do an affidavit for [Petitioner]." (citation to Petition
4       omitted)

5   (Doc. 15 at 43).  Respondents go on to explain that, based on when Petitioner allegedly

6   learned of this information, and after applying statutory tolling, this claim is not barred by

7   the statute of limitations.[11] The undersigned Magistrate Judge disagrees.

8        Petitioner addresses this alleged conversation between Eric Stewart, Mark Michaels

9   and Roger W. Thompson at the very end of the "Supporting Facts" section of Ground Four.

10  (Doc. 1-3 at 6) He makes no mention of a time period when that conversation allegedly

11  occurred or when he learned about it. (*Id.*) Petitioner does not write anything to indicate he

12  exercised due diligence to discover the information. (*Id.*) Respondents appear to assume that

13  Petitioner's reference to September 2010 earlier in that section also reflects when Petitioner

14  learned of the conversation between Stewart, Michaels and Thompson. This  Magistrate

15  Judge does not similarly interpret this statement because that is not what Petitioner wrote.

16  Respondents' speculation about a possible date on which Petitioner may have learned when

17  this alleged conversation occurred is an insufficient basis to conclude the limitation period

18  should run from any date other than "the conclusion of direct review or the expiration of the

19  time for seeking such review."  *See* 28 U.S.C. § 2244(d)(1)(A).  This Magistrate Judge finds

20  no basis to start the limitation period clock at a later time on Petitioner's vague claim of an

21  alleged conversation a witness at Petitioner's trial admitted to lying. Thus, contrary to

22  Respondent's conclusion, this Magistrate Judge treats Petitioner's claim in Ground Four the

23  same as the other claims and finds it is barred by the statute of limitations. *See Day v.*

24  *McDonough*, 547 U.S. 198, 202 (2006) (holding that a federal court has the authority to *sua*

25  *sponte* correct a state's error in failing to contest the timeliness of a habeas petition and

26  dismiss the petition as untimely under AEDPA's one-year statute of limitations).

27  _____

28      [11] Instead, Respondents argue this claim is procedurally defaulted and barred on that
    basis.

### C. Conclusion

For the foregoing reasons, this Magistrate Judge finds Petitioner filed the Petition after the statute of limitations period expired, and the circumstances do not support the application of equitable tolling. Consequently, the Petition is barred by the AEDPA's statute of limitations.

Based on the foregoing,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, doc. 1, be **DENIED**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, must not be filed until entry of the District Court's judgment. The parties have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), (b), and 72. Thereafter, the parties have 14 days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the undersigned Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation. *See* Fed.R.Civ.P. 72.

DATED this 7th day of October, 2013.

Lawrence O. Anderson
United States Magistrate Judge